16-2632 Peabody v. Theophilus Williams Karen Weiberg Margaret Smith, Assistant State's Attorney on behalf of the D.P.A. How much time do you want for rebuttal? I have five minutes. Okay, that'd be fine. All right, Mr. C. Pardon me, please excuse me if I'm clearing the floor. We're just getting over a bit of a cold. You're trying to keep your voice up, though. Yes, no, definitely, I will, yeah. May it please the Court? Counsel. Theophilus Williams filed a post-conviction petition, his first, in which he alleged that he was actually innocent of the two counts of aggravated battery with a firearm, for which he is currently serving a 24-year prison sentence. Attached to that petition, he included an affidavit from a man named Mark Williams. As far as we can tell from the record, there's no relation between the two. Can I ask you a question? Why did he wait until 2013 to file this post-conviction petition claiming actual innocence, arguing that Williams' affidavit supported that? Why? Frankly, Your Honor, we don't know. The record doesn't show us why he took that amount of time. However, the Post-Conviction Hearing Act explicitly exempts claims of actual innocence from the timeliness requirements. Therefore, under the Act and following its terms, Mr. Williams simply had no reason to explain why he took that amount of time. Now, perhaps he was pursuing other evidence that he thought would help him. Perhaps he was trying to get some other incident, or he was pursuing some other avenue of relief. But under the Act, a claim of actual innocence is not subject to timeliness requirements. And therefore, there was simply no reason to try to explain, for example, a lack of culpable negligence, as you might in a normal, in another kind of claim when filed beyond the time deadline. Now, we have maintained this affidavit. What is significant about it is really two points, and that is that, one, this affidavit shows that another individual, a person named Angelo Powell. Mr. Weisberg, the affidavit that you're talking about of Mark Williams, isn't it true that Mr. Williams was brought into court and the attorneys were allowed to interview him? And he specifically stated to the court, I don't know what they're talking about. I don't know anything about this. So how does that not negate any effectiveness of that affidavit? Well, Your Honor, the reason that doesn't affect or negate any effectiveness is that this affidavit was filed eight months later. Now, whatever Mark Williams, and in fact, it's significant to what makes this evidence newly discovered, that Mark Williams actually did come into court and denied knowing anything about this, the fact that he signed an affidavit eight months after that appearance in which he admitted that, in point of fact, he does know something about this, at this point, we are required to take that affidavit as true. But did the affidavit explain anything about why he claimed to the court and counsel and everybody who had listened that he knew nothing about this? Did he explain away what his problem was eight months prior? The affidavit did not, no. Okay. But again, at this point... So the court was, according to your argument, I just want to make sure I understand your argument, the court is supposed to pretend that never happened and just go on with what the affidavit says? Not at all, Your Honor. I'd imagine if there was an evidentiary hearing, one of the things that the State would raise in attempting to impeach any testimony that the defense might bring forward from Mark Williams would be the fact that he stood up in front of the court previously and said he didn't know anything about this. But that has to do with the credibility judgment and that addresses whether or not we believe what this affidavit says. And that is a concern that we simply can't deal with in the second stage of proceedings. Here we are required by the terms of the act to take the affidavit as true unless it is positively rebutted. And as we all know, witnesses do occasionally recant and they do occasionally change their stories. But that didn't happen in this case. Respectfully, Your Honor, I would disagree. The affidavit is from any of the witnesses who testified in this case saying that the testimony was false or incorrect. Well, no, what we have in that case didn't. In this case, did it? No, what we have is Mark Williams. So we have testimony from the trial record which directly refutes Mr. Williams' account, correct? It disagrees with Mr. Williams' account. I would not say it directly refutes it. There is also contrary evidence at trial. Okay. Thank you. So another question in regards to the affidavit. So it was used to try to show actual innocence, right? Yes. And then now it's being utilized for an ineffectiveness of counsel claim. Should we disregard Williams' affidavit on that basis? No, Your Honor. First of all, we're not pursuing any ineffective assistance argument on this appeal. We're purely pursuing an actual innocence claim. Second, while it would be inconsistent to argue that that affidavit both, that this court should both find that that equals ineffective assistance of counsel and newly discovered evidence of actual innocence, it is not at all inconsistent to argue that it could be either, particularly in a case like this. Now, here the record shows that in point of fact it appears from everything we can tell that there was nothing counsel could have done to get this information from Mark Williams previously because, as Your Honor pointed out, Mark Williams walked into court and it was very clear that he wasn't going to say anything about this. Now, in another circumstance where an affidavit like this would come up, there might be some question. Could counsel have gotten this information sooner? In which case, that would leave you with a question of is this actual innocence or is this ineffective assistance of counsel? And you could rationally argue that it's one or the other. But here, again, we believe that based on the record and the showing of Mark Williams, it's hard to put Mr. Williams in this case, that Mark Williams was clearly unwilling to testify to these matters at trial. Given that, we feel this could not properly be pursued as an ineffective assistance of counsel claim and this Court properly upheld the dismissal of that in the prior appeal. But now we are dealing with the actual innocence claim. And as far as the actual innocence claim is concerned, what we have is evidence that is newly discovered for the reasons we discussed, the fact that Mark Williams was clearly unwilling to provide this information at the time of trial. The affidavit at issue was not signed until five months after Theopolis Williams was tried and convicted. And Mark Williams prior to that was very clear that he had no interest in talking about any of this. So this was newly discovered and could not have been obtained sooner by due diligence. It is similarly non-cumulative. The State makes a brief argument that this should be considered cumulative because there were three witnesses at trial that testified that Theopolis Williams was not there for the shooting. Now, if Mark Williams had executed an affidavit that said Theopolis Williams wasn't there, that would be a strong argument, but that's not what the affidavit says. The affidavit says that Angelo Powell confessed to this shooting and that Angelo Powell told other people to identify Theopolis Williams. And Angelo Powell's name was never stated at any time during the trial. So clearly, this is evidence that adds to what was before the trier of fact. And therefore, this is evidence that would be considered non-cumulative. Okay. But following up on Justice Berg's question, so we have Williams's affidavit, but then the other witnesses haven't in any manner, shape, or form recanted their testimony. So how does the evidence at issue here probably change the outcome of the trial? Well, Your Honor, the reason is that while we, you know, yes, we still have the evidence from trial. We have ultimately seven witnesses roughly, I believe, who testified. You had basically the four witnesses who identified Theopolis for the state, the Payne brothers, Miss LaShonda Bradley, and I forget his first name, but Mr. Henderson, who all. However, about the only thing that the witnesses at this trial could agree on was that they were identifying Theopolis Williams. Beyond that, there were a host of inconsistencies and impeachments of all of these witnesses. And we also had three witnesses at trial who testified that Theopolis Williams was not there and was not involved in this shooting. Now, we had, I think if you put all of the witnesses together, six different people who various witnesses said were responsible for this shooting. You had Theopolis Williams. You had Kasten Rollins. You had someone named Stan. We don't know who Stan is, but someone named Stan. We had an unknown person who may or may not have been Stan at one point who came out of a gangway, according to, I believe, Evan Lewis Payne. Then we had somebody named Darren and somebody named Littlehot, according to another witness. Now, when a reasonable trier of fact, and keeping in mind that we are not at this point reviewing the sufficiency of the evidence, we're addressing a claim of new evidence, which means the question is simply if a hypothetical reasonable trier of fact were presented with the evidence that was presented at trial in which there was no physical evidence, there was no confession, this was all dependent upon the credibility of these witnesses' testimony, would it make a difference in the outcome if he was presented, if that hypothetical finder of fact were presented with evidence that somebody else, somebody that none of these witnesses put there, confessed to this shooting and was telling people to finger Theopolis Williams for it? We think that, especially given the many credibility problems with these witnesses, there is a significant chance that, yes, that would change the outcome of this trial. Now, does this conclusively prove that Theopolis Williams didn't do this? It does not, but it doesn't have to. The question is, could a reasonable finder of fact, if looking at this new evidence and the evidence that was presented, if they could even get so far as to look at this and say, honestly, we have no idea what happened out there, that's good enough because the result of that is a finding of not guilty. And so when you consider those credibility issues, and particularly the way that the evidence that Mr. Powell was not only responsible for this shooting, but was encouraging witnesses, one of whom I think there is at least a reasonable inference, it uses a slightly different name, but I think it's a reasonable inference, he's referring to LaShonda Bradford, or Bradley. I believe he used the name Bradford in the affidavit. One of whom actually testified at trial and testified against Theopolis Williams. I mean, does this make a difference in how the finder of fact reviews this evidence? We would argue that it absolutely does. And given that you had what basically came down to a credibility contest between the defense witnesses and the state's witnesses, with this new evidence, yes, we believe that there is at least a substantial showing that this would make a difference upon a retrial. Let me ask you one question concerning Mark Williams. Was he incarcerated at the time he executed the affidavit? I do not know if he was incarcerated at the time he executed the affidavit. He was incarcerated at the time that he first appeared in court. There's a reference in the record to the fact that they had him written into court to testify in this matter until defense counsel learned that he was. Wouldn't that be an important thing to put in an affidavit? Because people who are incarcerated, especially those people who are serving life sentences, when somebody gives them money, they don't have to say anything. Well, Your Honor, I would address that on a couple levels. First of all, I would say that we have at least fairly good reason to believe that Mark Williams was not incarcerated for life because according to PC counsel below... No, but your affidavit doesn't say where he was. No, it doesn't. It doesn't have that nature. I agree, Your Honor, but I think that what you're talking about in that is matters that would affect Mark Williams' credibility. You know, is it credible to believe him because he's in prison? Is it credible to believe him because he may be willing to say anything? Well, we have to take the entire record as it exists, including what went on in trial, and we have to take the affidavit and decide whether the decision may have been changed as a result of this or should have been changed. In order to determine that, we have to determine whether the man is in prison or not in prison, and you don't put that in the affidavit. Respectfully, Your Honor, I'm not entirely sure why, especially given that we are at the second stage where the affidavit has to be taken as true, I'm not certain where Mark Williams was at that time, other than affecting his credibility. True in reference to the entire record, you understand? You have to look at the entire record. I'm just bringing out a point. You could argue that this pencil is an elephant, but I know it's a pencil. Well, indeed, Your Honor, and if this affidavit had stated something that was physically impossible, we would certainly at that point have good reason to discount it. But again, following the standards under the Post-Conviction Hearing Act, if it's not explicitly refuted by the record, we have to take it as true. And whether Mr. Mark Williams was or was not in prison, whether he was or was not paid by someone, those are all matters that would presumably be brought out in an evidentiary hearing to attack his credibility as a witness. Here, taking that affidavit as credible, we have to accept that these are the things he's reporting and that the things he's reporting are accurate. That's exactly why we have a third-stage hearing and why we're not asking Your Honors at this point to reverse Theopolis Williams' convictions and send this back for a whole new trial. We're asking this Court to send this back so that an evidentiary hearing can be held at which perhaps the witnesses can be questioned and at which someone can judge the credibility. Is Mark Williams credible when he says these things or not? And at that point, then, a decision can be made about the ultimate question as to whether this should go to a new trial. And Your Honors, I will, just briefly, would like to address the request we do... Well, you're already past your time, but... Oh, okay. Well, if I'm already past my time, then I'll reserve any further comments for rebuttal. Thank you very much. Thank you. Good morning, Your Honors. May it please the Court, I'm Assistant State's Attorney Margaret Smith on behalf of the people of the State of Illinois. This Court should affirm the dismissal of the petition because the defendant failed to make a substantial showing of a claim of actual innocence. Because he's met the threshold for a freestanding claim of actual innocence, this Court must look at the post-conviction evidence in the light of the four factors that we use for these claims. And the most important factor is whether or not the evidence defendant is presenting on post-conviction is of such conclusive character that it will probably change the result on retrial. As here we have very unique circumstances, as you have already pointed out. Here, the claims of the affiant that defendant is presenting in his post-conviction claim are refuted by the record. They are positively refuted by the record. They're contradicted by what the affiant told the trial court before trial concerning his knowledge about the shooting when he was brought before the trial court by defense counsel to see if he had any evidence defense counsel would use to defend the defendant. And at that point, the affiant told the trial court he didn't know anything about what they were talking about. Excuse me, but aren't we talking about two different things here? Because in the affidavit, if I understand correctly, what he's saying is so-and-so said that, you know, someone else did the shooting. So it's not so much knowledge about what happened on the day of the incident, but it's about, you know, who may have been the actual shooter in the incident. Well, excuse me if I'm not understanding. So it's the way I'm reading it is two different ways. So it's not so much about, you know, I was there and I saw what happened that night. It's more about someone told me after the fact that they knew who was the actual shooter. Right. And in the time frame we're given here, it's not as if, first of all, the affidavit says that the affiant knew something about the shooting, which contradicts what he told the trial court before. And there's nothing here that says that he was told the day after the shooting or eight years, you know, we do have a time frame here, but there's nothing to say that he found out this information after he talked to the trial court. That's not what we have here. What we have here is the affiant being brought in by defense counsel specifically to find out if he could help defendants claim that he didn't do the shooting, that he wasn't even there, that he wasn't involved in the shooting. And the affiant says, I don't know anything. He doesn't say, I couldn't see, I heard. He doesn't say anything except, I don't know anything about what they're talking about. That would encompass the entirety of the shooting, anything about it. So he made that affirmative declarative statement to the trial court at the point when they were trying to determine if he would be a helpful witness for a defendant. So here what we have is we have at the second stage. But I think counsel's conceding that. And Mr. Weinberg is saying that, yeah, I get it, that he came to court and he said he knew nothing about it, but he comes up with this affidavit and doesn't that just go to his credibility? And wouldn't that have been vetted or challenged if he was given a hearing? Well, I think what we're looking at at this stage, second stage actual innocence claim, what we need to look at is whether the affidavit is contradicted by the record. Okay, we're assuming that counsel is conceding that. That's fine. But we don't get to the third stage evidentiary hearing because what we have to look at is the affidavit that's being presented now and the sufficiency of that. And unlike the cases that counsel cited, we don't have a co-defendant. We have no explanation for why he's changing his story now in the affidavit. There's nothing, absolutely no explanation. And it's not for this court. So what you're telling us is the affidavit is not of such a conclusive nature that it would show that the verdict should be changed. Correct. And so, therefore, defendant fails to make a substantial showing based on the evidence he's presenting of actual innocence at the second stage. So this shouldn't go to a third stage. We don't go to a third stage and let the affidavit explain why he changed his story in the affidavit from what he affirmatively told the trial court, which was that he knew nothing about the shooting. What about their argument that the testimony of the witnesses at trial were either contradicted or were inconsistent and then this affidavit's bully is going to clear everything up? Okay. Well, at this stage, we're in the Post-Conviction Hearing Act. We're at a second stage hearing where the evidence is being examined at the second stage. That evidence is the affidavit. We're looking at what's in the affidavit. We have no explanation for the contradicted, for why he is now saying he knows something as opposed to nothing. So based on that, it's the role of this Court not to resolve the inconsistencies or to speculate as to why he informed. We don't even go to reevaluating the inconsistencies. Defendant has failed to make the substantial showing because the affidavit does not explain away the contradiction. It's affirmative. The trial record contradicts the claim, the defendant, the claims of the affidavit the defendant is now bringing in support of his claim of actual innocence. It is not the role of this Court to go back and look at any inconsistencies. We don't get there unless this affidavit the defendant is presenting meets the criteria. We're arguing that it doesn't. There's no explanation, contrary to the other cases that the defendant cited where there's either a co-defendant with a Fifth Amendment right against self-incrimination or we have a recantation, as Your Honor brought up. There's no recantation here. We have no explanation. Defendant is relying on a piece of evidence that does not meet the criteria, does not make a substantial showing. Additionally, if there's no more questions on that point, the affidavit did not really discover evidence. As has been pointed out, the affidavit was brought before the trial court. Defendant clearly knew him. We have no co-defendant situation. We have no recantation. We have no explanation. In the event that this Court remands the matter for a third-stage evidentiary hearing, this matter should be reassigned to the same judge. Defendant here relies on cases that are highly distinguishable, where the trial court had a conflict of interest. In one case where the court knew the victim, prosecuted the victim, and the prosecution would use this impeachment evidence at trial and an aggravated factor at sentencing against that defendant. And in the other case, this Court found that the trial court gave the impression it was flatly unwilling to consider the evidence. We have nothing like that here. This case is highly distinguishable, and this Court should remand to the trial judge if this Court decides to remand. We argue should not. Because defendant has failed to make a substantial showing of a constitutional violation, we ask for these reasons and those set forth in our brief, that this Court affirm the dismissal of the petition, and in the event that this Court were to remand the matter for an evidentiary hearing, we'd ask that it be reassigned to the same judge. Thank you. Thank you both. I'd like to address just a few things, and to start with the statement that we have nothing like in the record showing that this judge is unwilling to consider this evidence. We have seven court dates on which this judge explicitly stated multiple times, I would have dismissed this at first stage. This should have been dismissed. This shouldn't be here. But now we have to deal with it. He told the defense attorney, I've reviewed this. It's not complicated. He actually, prior to a hearing, referred to this as a so-called actual innocence claim. But him saying not complicated is somehow indicative of him being prejudiced against the defendant? When he's saying, I've reviewed this. It's not complicated in any way indicative of that he's prejudiced. Well, Your Honor, first of all, I would point out that that's one comment amongst about 13. Beyond that, I would also point out. I say things are not complicated all the time, and that doesn't mean I've prejudged him. Well, Your Honor, I honestly couldn't hazard to guess. Sex is our judge? I believe so, yes. He thinks nothing is complicated. So why would that indicate that he's biased? Well, when he's in the process of berating defense counsel to get things done quicker and get this moving, and when he repeatedly says this should have been dismissed previously, there is nothing to this, this so-called claim of actual innocence, that we think pretty clearly shows bias. As far as issues of we don't have a recantation here, first of all, this statement at court prior that I don't know anything about this, this was not under oath. This was not somebody who got up on the stand and subjected themselves to perjury and testified, I don't know anything about this. This was somebody who stood there and said, I'm not saying anything. I don't know anything about any of this. Your Honor, we have cited cases in the record where witnesses got up on the stand, testified, and then turned around years later and said, what I got up there and testified to under oath was false. Now, if that doesn't constitute rebutted by the record, and this court has previously held that it does not, it constitutes a conflict in the evidence. And a conflict in the evidence is something that can only be resolved via an evidentiary hearing where we can put the witnesses on the stand and judge their credibility. And so that does not positively rebut this affidavit. It might be an issue, again, when credibility comes up, but not at this point. And we can, again, we can look to people v. Harper, we can look to people v. Ortiz. The fact that other witnesses testified to something different, if that were sufficient to render something rebutted by the record, there literally could not be a claim of actual innocence. Because, of course, everyone who has been convicted, there was evidence presented at trial suggesting that they committed the offense. That necessarily, to some extent, conflicts with later evidence that says that they didn't. But those conflicts in evidence are to be resolved in a third stage hearing or later at a retrial, not here at the second stage where we're dealing solely with the pleadings. And we are presuming, we are taking the well-plead allegations to be true. Well, in Ortiz there was no real conflict in the evidence. Respectfully, Your Honor, in Ortiz there were two or three witnesses who said we saw the defendant shoot people and then a new witness who said the defendant did not shoot anyone. No, I think you're mistaken. I'd be happy to submit additional. There was one witness who said it and later recanted his testimony. And the new witness said, you see, what happened in Ortiz, there were two shooters. One pleaded guilty. Yes. And the one who pleaded guilty wouldn't say who the other shooter was. Right. It ended up that the other shooter was his brother. That's why he didn't want to say anything. Okay. So there was one witness who was a member of the gang. Everybody was a member of a gang. And he pointed out that the defendant Ortiz was the shooter but later recanted his testimony. And the new fellow came and told us who the shooter was. It was the first shooter's brother. It all made sense. There was no conflict. And ultimately, after Ortiz was let go and as an innocent person, the person that the witness fingered as the shooter pleaded guilty. So it all came out the way it should come out. The guilty was punished and the innocent man was let free. Well, that may be, and that might yet happen in this case. We don't know because we haven't gotten to a new trial and we haven't gotten to an evidentiary hearing. In Ortiz, as here. Well, it's not the same set of facts here. There's nobody here who was a witness who's recanting. We don't know whether Williams was in prison or where he was or why he said what he said. None of that's in the affidavit. It has to be of a conclusive nature for us to change the case. We have to be able to feel that that is going to change the verdict. These are all the things that we have to make a determination of. Respectfully, Your Honor, some of those things you have to make a determination of after it gets to the third stage. And many of the factors you're discussing are factors that address credibility. And credibility may ultimately be a reason to kick this claim out. But here, where we are confined to the pleadings and we are required by cases like Coleman to take the affidavits as true, at this stage those concerns simply haven't become ripe. We have to determine whether it's a fanciful type of affidavit or whether it's a true affidavit, too. These are factors that we have to make decisions in. Certainly if it were fanciful, if it were against common notions of physical reality or obviously delusional are some of the phrases that the case laws use to describe this, you know, if Mark Williams had signed an affidavit saying aliens did this, that would be a very good reason to pick this out. Or it said the exact opposite thing a few months ago. Well, what he said a few months ago was he didn't know anything. Inoperable. Not under oath. And now he's got all kinds of details. That's not fanciful. That doesn't render this fanciful. No, Your Honor, that creates a conflict in the evidence. And a conflict in the evidence requires a hearing. So, therefore, anybody who signs an affidavit on a post-conviction petition saying that the defendant didn't do it should get an evidentiary hearing. Is that what you would like us to write? I would, if they put forward facts that, if true, would change the outcome of a new trial, then yes, absolutely. Okay. And if there's nothing further, we would ask Your Honors to reverse this case and remain for a third stage hearing where many of the concerns you brought up today could be properly addressed before a new judge who will hopefully approach it with an open mind. Thank you. Thank you. We will take this case under consideration and give you an order and opinion shortly. The court will be adjourned for a few moments because we have to change panels.